IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Ralph Infante, | CASE NO. 4:21-cv-1307 |
| Petitioner, | DISTRICT JUDGE |
| | James G. Carr |
| vs. | |
| | MAGISTRATE JUDGE |
| | James E. Grimes Jr. |
| Warden Jennifer Gillece Black, | |
| Respondent. | **REPORT &** |
| | **RECOMMENDATION** |

Ralph Infante filed a Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus. Doc. 1. Infante is currently in custody at the Lorain Correctional Institution serving a concurrent total sentence of 10 years' imprisonment imposed by the Trumbull County Court of Common Pleas in State v. Infante, Case No. 2017-CR-489-B. The Court referred this matter to a Magistrate Judge under Local Rule 72.2 for the preparation of a Report and Recommendation. For the following reasons, I recommend that the Court deny Infante's petition.

**Summary of underlying facts**

In habeas corpus proceedings brought under 28 U.S.C. § 2254, factual determinations made by state courts are presumed correct. 28 U.S.C. § 2254(e)(1). "This presumption also applies to the factual findings that [a] state appellate court makes on its review of the state trial record." *Johnson v. Bell*,

525 F.3d 466, 474 (6th Cir. 2008). The petitioner has the burden of rebutting

that presumption by clear and convincing evidence. *Id.*

The Ohio Court of Appeals for the Eleventh Appellate District

summarized the facts underlying Infante's conviction as follows:

> {¶2} Mr. Infante served as the mayor of the City of Niles ("the City") for more than twenty years. Before he was elected mayor and after he lost his final bid for reelection, he and his wife also owned and operated the Italian American War Veteran's Club ("the ITAM"). The ITAM was a members-only establishment that primarily functioned as a bar/restaurant and social organization. Individuals who were interested in joining would pay a small fee and, thereafter, would be welcome to frequent the club and engage in the activities it offered. Gambling was one type of activity that the club offered. Over the years, Mr. Infante routinely organized block games based on either professional or college-level football games.

> {¶3} In the mid-2000s, a councilman for the City contacted the State of Ohio Auditor's Office and requested an audit of the City's bank account. The audit uncovered wrongdoing unrelated to Mr. Infante, but also led state officials to investigate him personally for public corruption. The investigation spanned several years with both state and federal officials participating in various aspects. Based on intelligence the officials received during their interviews, a review of documents and other items they seized at various junctures, and forensic analyses of financial accounts linked to Mr. Infante, his wife, and the ITAM, the officials concluded that Mr. Infante had routinely underreported his income, had misused the City's resources, and had otherwise abused his position while serving as mayor.

> {¶4} Mr. Infante was ultimately indicted by a grand jury. His 41-count indictment contained

- nine counts of tampering with records related to his Ohio ethics disclosure forms;
- four counts of tampering with records related to his and his wife's federal income tax returns;
- three counts of tampering with records related to his and his wife's city income tax returns;
- two counts of gambling;
- two counts of operating a gambling house;
- one count of possessing criminal tools;
- seven counts of soliciting improper compensation;
- two counts of theft in office;
- one count of having an unlawful interest in a public contract;
- eight counts of bribery;
- one count of engaging in a pattern of corrupt activity; and
- one count of falsification.

Nine counts were dismissed before trial, and ten counts resulted in not guilty verdicts. The jury returned guilty verdicts on thirteen counts of tampering with records, two counts of gambling, two counts of operating a gambling house, two counts of theft in office, one count of having an unlawful interest in a public contract, one count of engaging in a pattern of corrupt activity, and one count of falsification.

{¶5} The State conceded that Mr. Infante's two counts of theft in office were allied offenses of similar import. The trial court, therefore, merged those two counts for purposes of sentencing. It then sentenced Mr. Infante to either prison or jail on each of his remaining counts and ordered him to serve those terms concurrently for a total of ten years in prison.

*State v. Infante*, 2020-Ohio-992, 2020 WL 1308678, at *1 (Ohio Ct. App. 2020).

3

## Procedural background

*Trial court proceedings*

In 2017, a Trumbull County grand jury issued a 50-count indictment which included counts charging Infante with tampering with records, in violation of Ohio Revised Code § 2913.42 (16 counts); gambling, apparently in violation of Ohio Revised Code § 2915.02[1] (two counts); operating a gambling house, in violation of Ohio Rev. Code § 2915.03 (two counts); possessing criminal tools, in violation of Ohio Rev. Code § 2923.24 (one count); soliciting improper compensation, in violation of Ohio Rev. Code § 2921.43 (seven counts); theft in office, in violation of Ohio Rev. Code § 2921.41 (two counts); having an unlawful interest in a public contract, in violation of Ohio Rev. Code § 2921.42 (one count); bribery, in violation of Ohio Rev. Code § 2921.02 (eight counts); engaging in a pattern of corrupt activity, in violation of Ohio Rev. Code § 2923.32 (one count); and falsification, in violation of Ohio Rev. Code § 2921.13 (one count). Doc. 9-1, at 6–48. Infante pleaded not guilty. *Id.* at 50.

Before the start of Infante's trial, the State dismissed nine counts and renumbered the remaining counts. Doc. 9-1, at 220. Following Infante's trial, a jury found him guilty of 13 counts of tampering with records, both gambling counts, both counts of operating a gambling house, both theft-in-office counts, having an unlawful interest in a public contract, engaging in a pattern of

---

[1]  Count 26 charged Infante with gambling but did not specify the statute that Infante allegedly violated. Doc. 9-1, at 18.

4

corrupt activity, and falsification. *Id.* at 186–218. In May 2018, the trial court stated that it would merge counts 23 and 24, which alleged theft in office, *see id.* at 240, and sentenced Infante to 10 years' imprisonment for "engaging in a pattern of corrupt activity" and concurrent prison terms, as follows: 36 months each for the 13 counts of tampering with records; 12 months for theft in office; and 18 months for having an unlawful interest in a public contract. Doc. 9-1, at 222. The trial court also sentenced Infante to concurrent six-month terms in jail for the two gambling counts, the two counts alleging operating a gambling house, and the count alleging falsification. *Id.*

*Direct appeal*

Infante filed a timely notice of appeal with the Ohio court of appeals. Doc. 9-1, at 228–30. The court of appeals, however, noted that because the trial court failed to enter an order merging counts 23 and 24 and did not enter a sentence for count 24, its sentencing entry was not a final, appealable order. *Id.* at 240. The court of appeals thus dismissed Infante's appeal for lack of jurisdiction. *Id.* at 241. The trial court corrected its omission in a nunc pro tunc order entered in late June 2019. *Id.* at 247. Infante then filed a timely notice of appeal in July 2019. *Id.* at 259–61.

In his supporting brief, Infante raised seven assignments of error:

> 1. The evidence is insufficient to convict Infante of engaging in pattern of corrupt activity, R.C. 2923.32(A)(1).

2. The evidence is insufficient to sustain a conviction of tampering with records in violation of R.C. § 2913.42.

3. The convictions of tampering with records, R.C. § 2913.42. violate Ohio's prohibition of the use of general criminal law provisions over specific statutory provisions of a lesser degree.

4. The trial court denied the appellant due process of law and a fair trial by allowing improper lay opinion testimony to be considered by the jury to determine if the appellant profited from a game of chance.

5. The finding of guilt by the jury of R.C. § 2923.31(A)(1), theft in office, is violative of the due process clause as the jury was not required to unanimously find the appellant guilty of each material element of the offense.

6. The State lacked jurisdiction to charge the appellant for tampering with records, convictions based upon violations of federal tax reporting laws.

7. The trial court erred by failing to merge the offenses underlying the conviction of engaging in pattern of corrupt activity, R.C. 2923.32(A)(1).

Doc. 9-1, at 292–319. The court of appeals affirmed in late March 2020. *Infante*, 2020 WL 1308678.

In April 2020, Infante's counsel filed on his behalf a notice of appeal with the Ohio Supreme Court. Doc. 9-1, at 423–24. In his memorandum in support of jurisdiction, Infante raised five propositions of law:

I. An "association-in-fact" enterprise requires the prosecutor to establish that the defendant's actions are part of a continuing unit that functions with a "common purpose" as opposed to a series of unrelated illegal acts.

6

II. A defendant indicted under Ohio's RICO statute, Engaging in Pattern of Corrupt Activity, R.C. §2923.32(A)(1), as "an association-in-fact" enterprise may not be convicted as a single person enterprise as this is a separate and distinct theory than had been presented to the grand jury.

III. The mere existence of a material omission from a required ethics disclosure is insufficient to sustain a conviction of Tampering With Records R.C. §2913.42, which requires an affirmative action by the defendant.

IV. Evidence Rule 701 does not permit a witness to offer a lay opinion if the foundation of that testimony is mere speculation as to how the events unfolded in the opinion of that witness.

V. A charge for Theft of Office, which charged to have transpired over a number of years, may not be based upon a list of a series of possible independent events that may have constituted a theft incident as the basis of the offense without requiring a unanimous finding of any single specific incident.

Doc. 9-1, at 433–43. On July 7, 2020, the Ohio Supreme Court declined under rule 7.08(B)(4) of its rules of practice to accept jurisdiction. *Id.* at 494. Infante did not seek review in the United States Supreme Court.

*Federal habeas proceedings*

Infante filed a timely petition for writ of habeas corpus in early July 2021. Doc. 1. He raises the following grounds for relief:

GROUND 1: The Evidence was insufficient to sustain a conviction of O.R.C.§2923.32(A)(1), Engaging in a Pattern of Corrupt Activity.

GROUND 2: The evidence is insufficient to sustain a conviction of Tampering with Records, O.R.C. 2913.42

7

GROUND 3: The evidence is insufficient to sustain
a conviction of Theft in Office O.R.C. § 2923.31(A)(1).

Doc. 1, at 5–8.[2]

## Legal Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub.
L. 104-132, § 104, 110 Stat. 1214 (AEDPA or the 1996 Act), habeas petitioners
must meet certain procedural requirements to have their claims reviewed in
federal court. *Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 430 (6th
Cir. 2006). "Procedural barriers, such as statutes of limitations and rules
concerning procedural default and exhaustion of remedies, operate to limit
access to review on the merits of a constitutional claim." *Daniels v. United
States*, 532 U.S. 374, 381 (2001). Although procedural default is sometimes
confused with exhaustion, exhaustion and procedural default are distinct
concepts. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Failure to
exhaust applies when state remedies are "still available at the time of the
federal petition." *Id.* (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)).
But when "state court remedies are no longer available to a petitioner because
he or she failed to use them within the required time period, procedural default
and not exhaustion bars federal court review." *Id.*

---

[2]     As supporting facts for his grounds for relief, Infante respectively
references paragraphs 1 through 17, 18 through 37, and 38 through 44 of an
attached appendix, *see* Doc. 1, at 5–8; *see also* Doc. 1-1. Given the length of the
supporting facts, I have not reproduced them here.

*Exhaustion*

A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A); *Robinson v. Horton*, 950 F.3d 337, 343 (6th Cir. 2020). To exhaust his remedies, a state defendant with federal constitutional claims must "fairly presen[t]" those claims to the state courts before raising them in a federal habeas corpus action. *Robinson*, 950 F.3d at 343 (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006). A constitutional claim for relief must be presented to the state's highest court to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845–48 (1999); *Caver v. Straub*, 349 F.3d 340, 345 (6th Cir. 2003). And a habeas petitioner must "present[] both the factual and legal basis for [the] claims to the state courts." *Hanna v. Ishee*, 694 F.3d 596, 606 (6th Cir. 2012). This means that the "'petitioner must present his claim to the state courts as a federal constitutional issue—not merely as an issue arising under state law.'" *Williams*, 460 F.3d at 806 (quoting *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984)). "'[G]eneral allegations of the denial of rights to a "fair trial" and "due process" do not "fairly present claims" that specific constitutional rights were violated.'" *Hand v. Houk*, 871 F.3d 390, 418 (6th Cir. 2017) (quoting *Slaughter v. Parker*, 450 F.3d 224, 236 (6th Cir. 2006)).

9

*Procedural default*

Procedural default may occur in two ways. *Williams*, 460 F.3d at 806. First, a petitioner procedurally defaults a claim by failing "to comply with state procedural rules in presenting [the] claim to the appropriate state court." *Id*. In *Maupin v. Smith*, the Sixth Circuit directed courts to consider four factors when determining whether a claim is barred on habeas corpus review due to a petitioner's failure to comply with a state procedural rule: (1) whether there is a state procedural rule applicable to the petitioner's claim and whether the petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim; and (4) whether the petitioner can demonstrate cause for failing to follow the rule and actual prejudice by the alleged constitutional error. 785 F.2d 135, 138 (6th Cir. 1986); *see also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court and pursue that claim through the state's 'ordinary appellate review procedures.'" *Williams*, 460 F.3d at 806 (quoting *O'Sullivan*, 526 U.S. at 848); *see Woolbright v. Crews*, 791 F.3d 628, 631 (6th Cir. 2015)

10

("When a petitioner has failed to fairly present … claims to the state courts and no state remedy remains, [the] claims are considered to be procedurally defaulted."). While the exhaustion requirement is technically satisfied in this circumstance because state remedies are no longer available to the petitioner, *see Coleman v. Thompson*, 501 U.S. 722, 732 (1991), a petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review, *Williams*, 460 F.3d at 806.

To overcome a procedural bar, a petitioner must show "cause for the default and actual prejudice as a result of the alleged violation of federal law," or show that a "fundamental miscarriage of justice" will result if the petitioner's claims are not considered. *Coleman*, 501 U.S. at 750.

*Merits review*

If a state's courts adjudicated the merits of a claim, a habeas petitioner may obtain habeas relief under 28 U.S.C. § 2254, if the petitioner can establish one of two predicates. To establish the first predicate, the petitioner "must identify a 'clearly established' principle of 'Federal law' that" has been established by a holding of the Supreme Court. *Fields v. Jordan*, 86 F.4th 218, 231 (6th Cir. 2023) (en banc); *see* 28 U.S.C. § 2254(d)(1). The petitioner must then show that state's court's adjudication "was contrary to," or "involved an unreasonable application of" that "clearly established" precedent. 28 U.S.C. § 2254(d)(1) (emphasis added); *see Fields*, 86 F.4th at 232.

11

To establish the second predicate, the petitioner must show that the state's court's adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the [United States Supreme] Court on a question of law or" based on "a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A]n 'unreasonable application of'" the Court's holdings is one that is "'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003)).

"[A] 'clearly established' principle of 'Federal law' refers to the "holdings," not "dicta," of the Supreme Court's decisions. *Fields*, 86 F.4th at 231 (quoting *White*, 572 U.S. at 419). A state court is not required to cite Supreme Court precedent or reflect an "awareness" of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts" such precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002); *Lopez v. Wilson*, 426 F.3d 339, 358 (6th Cir. 2005). If the Supreme Court has not

12

addressed the petitioner's specific claims, a reviewing district court cannot find that a state court acted contrary to, or unreasonably applied, Supreme Court precedent or clearly established federal law. *Carey v. Musladin*, 549 U.S. 70, 77 (2006); *see White*, 572 U.S. at 426 ("Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error.").

In determining whether the state court's decision involved an unreasonable application of law, the Court uses an objective standard. *Williams*, 529 U.S. at 410. "A state court's determination that a claim lacks merit precludes federal habeas review so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011). "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

## Discussion

*1. Ground one fails on the merits*

In his first ground for relief, Infante asserts that the evidence was insufficient to convict him of engaging in a pattern of corrupt activity in violation of Ohio Rev. Code § 2923.32(A)(1). Doc. 1-1, at 7. Specifically, he alleges that because the State charged him with participating in "an association-in-fact criminal enterprise," it was "require[d] … to establish that [his] actions are part of a continuing unit that functions with a 'common purpose' as opposed to a series of unrelated illegal acts." *Id.*

Infante presented this issue to the Ohio Supreme Court. Doc. 9-1, at 433–36. And Respondent does not claim that Infante failed to fairly present this issue to Ohio's courts. So we move to the merits.

The court of appeals, which was the last court to offer a reasoned opinion about this issue, rejected Infante's argument:

> {¶28} In his first assignment of error, Mr. Infante argues that his conviction for engaging in a pattern of corrupt activity is based on insufficient evidence. Specifically, he argues that there was no evidence he ever associated with or conducted a criminal enterprise. Upon review, this Court concludes that Mr. Infante's argument lacks merit.
>
> {¶29} As previously noted, a sufficiency challenge generally "raises a question of law as to whether the prosecution was able to present some evidence concerning each element of the charged offense." *Almonte*, 2006-Ohio-6688, at ¶ 28. In analyzing a sufficiency challenge, a reviewing court will

14

examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Jenks*, 61 Ohio St.3d 259 at paragraph two of the syllabus.

{¶30} R.C. 2923.32, the corrupt activity statute, is "Ohio's version of the federal Racketeering Influenced and Corrupt Organizations Act ('RICO')[.]" *State v. Birdsong*, 11th Dist. Lake No. 2013-L-003, 2014-Ohio-1353, ¶ 42. The statute provides, in relevant part, that "[n]o person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity * * *." R.C. 2923.32(A)(1). Thus, to secure a conviction under the statute, the State must "[be] able to 'prove both the existence of an "enterprise" and the connected "pattern of racketeering activity."'" *State v. Beverly*, 143 Ohio St.3d 258, 2015-Ohio-219, ¶ 7, quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981). Though the two elements are distinct, the State may rely on the same evidence to prove both elements. *See Beverly* at ¶ 7.

{¶31} Typically, the "enterprise" at the heart of a corrupt activity conviction "is entirely an 'association in fact,' *i.e.* a de facto enterprise." *Id.* at ¶ 9. "An association-in-fact enterprise has been defined as 'a group of persons associated together for a common purpose of engaging in a course of conduct.'" *Id.* at ¶ 9, quoting *Turkette* at 583. The enterprise may be either illicit or licit and comprised of "any individual, sole proprietorship, partnership, * * * government agency, or other legal entity, or any organization, association, or group of persons

associated in fact although not a legal entity." R.C. 2923.31(C). "The definition * * * is remarkably open-ended[,]" *Beverly* at ¶ 8, and may " 'encompass even a single individual * * *.'" *State v. Gregg*, 11th Dist. Ashtabula No. 2006-A-0013, 2007-Ohio-1201, ¶ 29, quoting *State v. Habash*, 9th Dist. Summit No. 17071, 1996 WL 37747, *5 (Jan. 31, 1996). As such, " 'the existence of an association-in-fact [enterprise] is oftentimes more readily proven by what it does, rather than by abstract analysis of its structure.' " *Beverly* at ¶ 11, quoting *Boyle v. United States*, 556 U.S. 938, 951 (2009).

{¶32} To establish a "pattern of corrupt activity," the State must set forth evidence of "two or more incidents of corrupt activity * * * that are related to the affairs of the same enterprise * * *." R.C. 2923.31(E). The incidents cannot be isolated or "so closely related to each other and connected in time and place that they constitute a single event." Id. The crimes of tampering with records, gambling, operating a gambling house, theft in office, and having an unlawful interest in a public contract are all examples of "corrupt activity." *See* R.C. 2923.31(I)(2).

{¶33} As previously noted, the State set forth evidence that Mr. Infante repeatedly filed ethics disclosure forms and tax returns containing false information. Over the course of eight years, he reported that he had not received any gifts and that his sources of income were limited to his salaried positions. Yet, his bank records reflected income related to a rental property, the operation of the ITAM, gambling pools he had conducted, various cash deposits from his annual fundraiser, and more than $100,000 worth of other, unaccounted for cash deposits. The foregoing conduct ultimately resulted in thirteen separate convictions for tampering with records, all of which were incidents of "corrupt activity." *See* R.C. 2923.31(I)(2)(c).

{¶34} The State also set forth evidence that Mr. Infante organized gambling pools on a regular basis

16

and personally profited from those pools. It is undisputed that, for many years, he and his wife operated the ITAM, a members-only bar/restaurant. D.D., a former employee there, testified that Mr. Infante routinely organized gambling pools for members based on either professional or college-level football games. She indicated that blocks would be sold for the games, with the blocks ranging in price. At different times, there would be blocks available to purchase for either $10, $25, $30, or $300 a piece. If various scores during a football game matched the numbers associated with a purchaser's block, the purchaser would receive a cash prize. The State introduced, as exhibits, pieces of paper on which various block games and the purchasers for those games had been handwritten. D.D. identified Mr. Infante's handwriting on many of those exhibits, all of which were confiscated from Mr. Infante's home when the police executed a search warrant there.

{¶35} A forensic auditor with the State of Ohio Auditor's Office reviewed the records of the gambling pools Mr. Infante conducted from 1992 until 2015 and calculated his total profit. Even though several years' worth of records were missing, the auditor estimated that Mr. Infante earned more than $34,000 as a result of the block games he organized during the years she reviewed. The foregoing conduct ultimately resulted in two convictions for gambling and two convictions for operating a gambling house, all of which constituted additional incidents of "corrupt activity." *See id.*

{¶36} The State also produced a wealth of other evidence tending to show that Mr. Infante abused his elected position in a variety of manners. For example, several witnesses testified that he accepted benefits from and bestowed benefits upon the owner(s) of a large company headquartered in the City. There was testimony that he: (1) accepted football game tickets, valued at approximately $4,000 each, from the company's owner without paying for them; (2) routinely requested that the

17

company purchase tickets to his annual campaign fundraiser; (3) urged the City's Board of Control, as one of its three members, to waive building permit and zoning fees for the company in excess of $12,000; (4) arranged for the company to receive certain city property and services without charge; and (5) never arranged to collect more than $60,000 owed to the City from the company after it was discovered that the company had not been billed for water at one of its properties. There also was evidence that Mr. Infante sanctioned and, at times directed, the use of city-owned property and services for the personal benefit of himself or others (e.g., snowplowing and tree-trimming services), used city-owned property as a campaign resource (e.g., city computers), misused city-owned funds (e.g., money collected from scrap metal sales), and made hiring decisions in contravention of the City's policies (e.g., by rehiring his brother and by approving a bid he favored without the input of City Council). The foregoing conduct and other, similar conduct resulted in two convictions for theft in office and one conviction for having an unlawful interest in a public contract, all three of which constituted additional incidents of "corrupt activity." *See* R.C. 2923.31(I)(2)(a).

{¶37} For purposes of his sufficiency challenge, Mr. Infante does not dispute that he engaged in a pattern of corrupt activity. Instead, he argues that his conviction is based on insufficient evidence because the State failed to prove that he belonged to or associated with an enterprise. He argues that his crimes were self-serving in nature and divorced from any common purpose shared by a larger group. To the extent they involved other individuals, he claims that those individuals acted in their own self-interest, not for the common purpose of providing him with power and money. According to Mr. Infante, "[o]ne person, violating multiple reporting offenses or ethical considerations, does not constitute a criminal enterprise."

{¶38} While a criminal enterprise must have a common purpose, "[t]he definition of 'enterprise' is

18

remarkably open-ended." *Beverly*, 143 Ohio St.3d 258, 2015-Ohio-219, at ¶ 8. It includes "'any individual, * * * or group of persons associated in fact although not a legal entity * * *.'" (Emphasis sic.) *State v. Sands*, 11th Dist. Lake No. 2007-L-003, 2008-Ohio-6981, ¶ 148, quoting R.C. 2923.31(C). "As is plain from the terms of the [statute] 'the legislature defined this term broadly to encompass even a single individual * * *.'" (Emphasis added.) *Gregg*, 2007-Ohio-1201, at ¶ 29, quoting *Habash*, 1996 WL 37747, at *5. Thus, "sufficient evidence of a pattern of corrupt activity [was] adduced if the [S]tate introduce[d] evidence [tending to] show that Mr. [Infante], either by himself, or in concert with others, * * * engaged in a pattern of activity consisting of two or more independent acts." (Emphasis added.) *Sands* at ¶ 152. *Accord Gregg* at ¶ 31.

{¶39} Viewing the evidence in a light most favorable to the State, a rational trier of fact could have concluded that the State proved, beyond a reasonable doubt, that Mr. Infante was associated with an enterprise when he committed his offenses. *See Jenks*, 61 Ohio St.3d 259 at paragraph two of the syllabus. The State produced evidence that Mr. Infante routinely used his elected position and the ITAM to earn additional income. For years, he accepted money, gifts, and services as a result of his elected position and wielded the authority he possessed as mayor to facilitate quid pro quo arrangements at the expense of the City. Even if Mr. Infante did not consistently associate with a particular group of individuals in furtherance of his self-serving objectives, there was evidence that he used both the office of mayor and the ITAM as a means of securing unreported income and other benefits for himself. *See* R.C. 2923.31(C) (noting that an enterprise can consist of individuals, government agencies, or any other organizations). Thus, a rational trier of fact could have determined that he, either by himself or in concert with the office of mayor and the ITAM, engaged in a pattern of corrupt activity. *See Sands* at ¶ 152; *Gregg* at ¶ 31.

19

> *See also State v. Clayton*, 2d Dist. Montgomery No. 22937, 2009-Ohio-7040, ¶ 39-46. Because Mr. Infante has not shown that his conviction is based on insufficient evidence, his first assignment of error is overruled.

*Infante*, 2020 WL 1308678, at *6–8.

As the court of appeals noted, Ohio Revised Code § 2923.32(A)(1) provides that "[n]o person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity or the collection of an unlawful debt." And an:

> "[e]nterprise" includes any individual, sole proprietorship, partnership, limited partnership, corporation, trust, union, government agency, or other legal entity, or any organization, association, or group of persons associated in fact although not a legal entity. "Enterprise" includes illicit as well as licit enterprises.

Ohio Rev. Code § 2923.31(C). A "[p]erson" includes "any governmental officer, employee, or entity." Ohio Rev. Code § 2923.31(G).

Infante starts his challenge by asserting that his case is "unique" because "according to the court of appeals, the enterprise is the individual, Infante. Thus, he must have associated with himself, if the decision is understood" Doc. 1-1, at 7. Having established his premise, Infante sets out relevant legal principles, many of which were discussed by the court of appeals. He asserts that "an 'association-in-fact enterprise is a group of persons associated together for a common purpose of engaging in a course of conduct'

20

and that 'the concept of association requires both interpersonal relationships and a common interest.'" *Id.* at 8 (quoting *Boyle v. United States*, 556 U.S. 938, 946 (2009));[3] *see id.* ("an association-in-fact enterprise is defined as 'a group of persons associated together for a common purpose of engaging in a course of conduct'").[4]

According to Infante, "[w]hen determining whether a group of people are 'associated-in-fact' a court will look to whether the group is a 'continuing unit that functions with a common purpose.'" Doc. 1-1, at 8; *see id.* at 10 (making the same assertion). And "'the enterprise must have a structure that has at least three features: a purpose, relationships among the associates, and longevity sufficient to permit the associates to pursue the enterprise's purpose.' *Id.* at 8–9 (quoting *Boyle*, 556 U.S. at 939); *see id.* at 9 (making the same assertion). Further, according to Infante, the enterprise's participants "'must have conducted or participated in the conduct of the enterprise's affairs,

---

[3]    Ohio's pattern-of-corrupt activity statute is "patterned after the [Federal] Racketeering Influenced and Corrupt Organizations Act," also known as "RICO." *U.S. Demolition & Contracting, Inc. v. O'Rourke Constr. Co.*, 640 N.E.2d 235, 240 (Ohio Ct. App. 1994). As a result, when they apply Ohio's statute, "Ohio courts look to federal case law applying RICO." *Id.*

[4]    Relevant to this assertion, Infante says "[t]his Court in *Beverly* cited *Boyle* with approval in finding that an association-in-fact enterprise is defined as 'a group of persons associated together for a common purpose of engaging in a course of conduct.'" Doc. 1-1, at 8. Infante cites "Beverly at ¶9" to support his assertion. Because this portion of his filing is lifted nearly verbatim from the memorandum in support of jurisdiction that Infante filed with the Ohio Supreme Court, *compare* Doc. 1-1, at 8, *with* Doc. 9-1, at 434, it is apparent that "this Court" is the Ohio Supreme Court and Beverly is *State v. Beverly*, 37 N.E.3d 116 (Ohio 2015), which the court of appeals cited.

not just their own affairs.'" *Id*. at 9 (quoting *Ouwinga v. Benistar 419 Plan Services, Inc*., 694 F.3d 783 (6th Cir. 2012)); *see id*. at 10 (making the same assertion).

Having discussed the relevant legal framework, Infante says that the prosecution's case boiled down to "a series of failure to report income or gift related offenses, all personal to Infante, not for the benefit of a 'unit.'" *Id*. at 9. He then reaches the crux of his argument, saying:

> For Infante to be guilty of this count, there must be sufficient evidence to prove beyond a reasonable doubt that there was an association-in-fact among those who had the common purpose to benefit only one man. This defies logic and does not constitute a cognizable common purpose for a criminal enterprise.

*Id*. at 9. Infante adds that:

> even if Infante was the enterprise, it must still be established beyond a reasonable doubt that he had a continuous relationship with one or more of the others who assisted him in the purpose of the enterprise, which, according to the state, was to enrich his personal coffers and influence. In other words, most of the allegation, like personal tax filings, were his own affair.

*Id*. at 10.

Infante concludes that "[o]ne person, violating multiple reporting offenses or ethical considerations, does not constitute a criminal enterprise," and:

> The fact that the State obtained convictions from his activities that transpired over approximately a decade establishes that he committed a number of

22

> offenses, but failed to establish he was part of an
> "enterprise. There was no structure or organization.
> The other participants were not related, other than
> that they knew Infante.

*Id.* at 11.

Putting aside for a moment the deference this Court owes Ohio's courts' adjudication of this issue, *see Fields*, 86 F.4th at 231–32, the problem with Infante's first ground for relief is that he has ignored what the court of appeals said and has instead set up a straw man. Infante's foundational premise is that the court of appeals held that "the enterprise is the individual, Infante." Doc. 1-1, at 7. Infante says that this means that "he must have associated with himself, if the decision is understood." *Id.* From there, he seems to argue that one person cannot associate in an enterprise with himself, there was no structure to the one-person enterprise, and any other people in some way involved did not participate in the enterprise. *Id.* at 7–10.

But the court of appeals didn't say that the evidence showed that the enterprise was comprised only of Infante. Further, it didn't suggest that he only associated with himself. Instead, it said that "a rational trier of fact could have determined that" Infante acted in association with his elected office and the ITAM. *Infante*, 2020 WL 1308678, at *8. And an individual can associate with an entity even if the individual is the sole owner or member of the entity. *See Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163 (2001); *State v. Clayton*, 2009-Ohio-7040, 2009 WL 5247521, at *6–7 (Ohio Ct. App. 2009); *State v. Silverman*, 2006-Ohio-3826, 2006 WL 2075642, at *24–25 (Ohio Ct.

23

App. 2006), *aff'd sub nom. In re Crim. Sent'g Cases*, 876 N.E. 2d 528 (Ohio 2007). This includes a person who associates with the public office that he holds. *See United States v. Blandford*, 33 F.3d 685, 703 (6th Cir. 1994) (citing cases); *United States v. Joseph*, 526 F. Supp. 504, 507 (E.D. Pa. 1981).

Because he has ignored or misread the thrust of the court of appeals' decision, the points Infante raises are largely irrelevant. Importantly, he does not take issue with the determination that he associated with his office and the ITAM for the purpose of benefitting himself. *Infante*, 2020 WL 1308678, at *8. Infante also doesn't provide a reason to question that he "was associated with an enterprise when he committed his offenses" or that he "routinely used his elected position and the ITAM to earn additional income." *Id.* So there is no reason to question these factual determinations or to hold that they were "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

Infante also strongly implies that an enterprise cannot have as its object the goal of benefitting or enriching one man. Doc. 1-1, at 10–11. But he cites nothing that might support this idea and offers no reason to question the court of appeals' determination that "there was evidence that [Infante] used" the enterprise to "secur[e] unreported income and other benefits for himself." *Infante*, 2020 WL 1308678, at *8. Indeed, given that by definition an "association" can be comprised of an individual, it is hardly surprising that an enterprise's object can be to benefit that individual. *See*, *e.g.*, *State v. Noe*, 2009-

24

Ohio-6978, 2009 WL 5174163, at *10 (Ohio Ct. App. 2009) (given evidence "that appellant was directly involved in an 'enterprise' … to take money from [one entity], funnel it through [another], and spend it *for his own personal use*[,] … appellant's engaging in a pattern of corrupt activity conviction was supported by sufficient evidence") (emphasis added).

To the extent that Infante claims that the enterprise was not continuing, Doc. 1-1, at 8–10, he ignores that the fact that he used his office and the ITAM for the entire course of the events at issue, *Infante*, 2020 WL 1308678, at *1, *7–8. And he provides no reason to think that he was not associated with the two entities during the course of his illicit activity. Further, even considering the individuals with whom he associated at different times during the course of the enterprise, *see* Doc. 1-1, at 11, "[t]here is no requirement … that all conspirators be involved in each of the underlying acts of racketeering, or that the predicate acts be interrelated in any way." *United States v. Qaoud*, 777 F.2d 1105, 1116 (6th Cir. 1985). Rather, "all that is necessary is that the acts are connected to the affairs of the enterprise." *Id.* In this case, they were.

Infante has misread or ignored the court of appeals' decision. He has thus failed to engage with the actual facts and has not shown that he is entitled to relief on this issue.[5]

---

[5] Infante does not argue that an association of him, his office, and the ITAM, as found by the court of appeals, differs from the association charged in the indictment. He has thus forfeited that argument which, in any event, was not presented to the Ohio Supreme Court. Nonetheless, an argument along these lines could not succeed because the indictment alleged that he acted with

2. *Ground two fails on the merits*

In his second ground, Infante asserts that the evidence was insufficient to support his conviction for tampering with records, in violation of Ohio Revised Code § 2913.42. Doc. 1, at 7. When reviewing a claim that a petitioner's conviction is not supported by sufficient evidence, the court asks "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This "standard 'gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc) (quoting *Jackson*, 443 U.S. at 319). In applying the standard, the court defers to the trier-of-fact's determination. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). The court does "not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the [fact-finder]." *Id.*; *see also Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003). "Circumstantial evidence alone is sufficient to support a conviction, and it is not necessary for the evidence to exclude every reasonable hypothesis except that of guilt." *Johnson v. Coyle*, 200 F.3d 987, 992 (6th Cir.

---

ITAM and that he acted in association with a number of listed individuals and "others known and unknown, all of whom are persons associate with the Enterprise." Doc. 9-1, at 24; *see* Ohio Rev. Code § 2923.31(G) (defining a "[p]erson" to include "any governmental officer, employee, or entity").

2000) (internal quotations and citations omitted); *see also Durr v. Mitchell*, 487 F.3d 423, 449 (6th Cir. 2007) ("circumstantial evidence is entitled to equal weight as direct evidence").

On federal habeas review, an additional layer of deference applies. *Brown*, 567 F.3d at 205; *see Coleman v. Johnson*, 566 U.S. 650, 651 (2012). First, the Court defers "to the trier-of-fact's verdict, as contemplated by *Jackson*." *Davis*, 658 F.3d at 531. And second, the Court defers under the 1996 Act to the state courts' "consideration of the trier-of-fact's verdict." *Id.* So even if this Court would conclude in the first instance that a rational trier of fact could not have found Infante guilty beyond a reasonable doubt, the Court "must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Brown*, 567 F.3d at 205; *see also White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009). This doubly deferential "standard erects 'a nearly insurmountable hurdle' for petitioners who ... seek habeas relief on sufficiency-of-the-evidence grounds." *Keys v. Booker*, 798 F.3d 442, 450 (6th Cir. 2015) (quoting Davis, 658 F.3d at 534)).

Here's what Ohio's court of appeals had to say about this issue:

> {¶12} In his second assignment of error, Mr. Infante argues that his tampering convictions are based on insufficient evidence. Specifically, he argues that the State cannot rely on an omission to prove the element of falsification. Upon review, this Court rejects his argument.

> {¶13} "As a general proposition, a 'sufficiency' argument raises a question of law as to whether the prosecution was able to present some evidence

concerning each element of the charged offense." *State v. Almonte*, 11th Dist. Portage No. 2005-P-0093, 2006-Ohio-6688, ¶ 28.

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶14} "No person, knowing [he] has no privilege to do so, and with purpose to defraud or knowing that [he] is facilitating a fraud, shall * * * [f]alsify, destroy, remove, conceal, alter, deface, or mutilate any writing * * * or record * * *." R.C. 2913.42(A)(1). Whoever does so is guilty of tampering with records. R.C. 2913.42(B)(1). Tampering with records is a third-degree felony "[i]f the writing * * * or record [at issue] is kept by or belongs to a local, state, or federal governmental entity * * *." R.C. 2913.42(B)(4).

{¶15} Paul Nick testified as the executive director of the Ohio Ethics Commission. He explained that each year state, county, and city elected officials are required to complete an ethics disclosure form wherein they must disclose personal financial matters. For elected officials whose annual salary exceeds $16,000, those matters include any sources of income, any gifts they receive in excess of $75, and the names of any businesses they or their immediate family members operate. Mr. Nick confirmed that any rental income, gambling income, or monetary gifts were matters that elected officials like Mr. Infante had to disclose.

28

{¶16} Relevant to this appeal, the State introduced through Mr. Nick the ethics disclosure forms that Mr. Infante filed from 2007 through 2014. Each form included, among other items: (1) a table for Mr. Infante to list his sources of income or, alternatively, a box to check to indicate that he had no sources of income; (2) a table for Mr. Infante to list the sources of any gifts he had received or, alternatively, a box to check to indicate that he had no sources of gifts; and (3) a table for Mr. Infante to list the names of any businesses he or his immediate family members operated or, alternatively, a box to check to indicate that there were no businesses he was required to list. For the years 2007 through 2014, Mr. Infante indicated that he had no gifts or businesses to disclose by checking the applicable boxes on his forms. Moreover, the only sources of income he listed were his mayoral salary, his salary from his position on the board of elections, and his pension.

{¶17} From 2009 until 2013, Mr. Infante and his wife used the same registered tax preparer to prepare their personal federal, state, and local tax forms. The tax preparer testified that he would meet with Mr. Infante and his wife each year, review their W-2s, and discuss their taxable income. For the years 2009 through 2011, Mr. Infante failed to disclose any gambling or rental income. For the years 2012 and 2013, he disclosed that he and his wife owned a rental property, but failed to disclose any gambling income.

{¶18} Chris Rudy, an investigator with the State of Ohio Auditor's Office, testified regarding several additional sources of income that Mr. Infante received over the years, but failed to disclose. Those additional sources of income included rental income that he and his wife received on their rental property, income they received operating the ITAM and conducting gambling pools there, various cash deposits from Mr. Infante's annual political fundraiser, and other cash deposits that the Auditor's Office was unable to link to any specific

source. Between 2007 and 2014, the Auditor's Office identified a total of $103,604.55 worth of unaccounted for cash deposits in the Infantes' bank account. Further, there was evidence that, in 2007, the Infantes accepted and failed to disclose a gift of tickets to the College Football National Championships, valued at approximately $4,000 a ticket.

{¶19} Several other witnesses offered testimony that served as circumstantial evidence of Mr. Infante's mental state concerning his disclosures. G.M., a former member of the ITAM, testified that he donated to Mr. Infante's campaign and gave him money in exchange for Mr. Infante securing a job for his son. He testified that Mr. Infante later told him to lie to investigators about the amount of his donation. Likewise, S.S., a city employee, testified that he initially lied to investigators because Mr. Infante encouraged him to do so. He testified that Mr. Infante told him not to "worry about the f***ing cops because I got this. I own these judges in this town." Similarly, Mr. Infante told B.P., a former employee in the City's Water Department that "he owned the judges" as well as the City and "[could] do what he want[ed]." Finally, Deane Hassman, an investigator with the FBI, testified regarding interviews he conducted with Mr. Infante in 2009 and 2015. He recorded both interviews without Mr. Infante's knowledge, and the State played those recordings at trial. During the interviews, Mr. Infante significantly downplayed his sources of income and changed many of his answers as Agent Hassman presented him with additional information. For example, he initially claimed that his wife did not have any side jobs from which she earned tips, but later changed his answer as he attempted to explain the cash deposits that routinely appeared in their bank account. He also gave Agent Hassman entirely different answers about the source of the tickets he procured when he and his wife attended the College Football National Championships. In 2009, he admitted that he accepted the tickets from the owner(s) of a large

company headquartered in the City and might not have paid for them. Yet, in 2015, he insisted that his wife had paid for the tickets as a birthday present to him. He also insisted that he had given Agent Hassman that information back in 2009.

{¶20} Mr. Infante argues that his tampering convictions are based on insufficient evidence because, as a matter of law, a mere omission does not amount to tampering. According to Mr. Infante, the tampering statute requires some affirmative act on the part of a defendant such as purposely altering a document. Because, at best, his actions were limited to inaccurately reporting certain information, he claims that he never falsified, destroyed, removed, concealed, altered, defaced, or mutilated any records. *See* R.C. 2913.42(A)(1).

{¶21} As noted, the tampering statute forbids any person from falsifying a record in the absence of a privilege to do so and for the purpose of committing a fraud. R.C. 2913.42(A)(1). A person defrauds another if he knowingly obtains a benefit for himself "by deception." R.C. 2913.01(B). The term "deception" includes "knowingly * * * causing another to be deceived by any false or misleading representation, *by withholding information*, by preventing another from acquiring information, or by any other conduct, act, *or omission* that creates, confirms, or perpetuates a false impression in another * * *." (Emphasis added.) R.C. 2913.01(A). "[F]iling a form containing false information with the intent to defraud can be a violation of R.C. 2913.42." *State v. Brunning*, 134 Ohio St.3d 438, 2012-Ohio-5752, ¶ 2. *Accord State v. Grooms*, 8th Dist. Cuyahoga No. 105874, 2018-Ohio-1093, ¶ 36 (tampering conviction upheld where defendant failed to disclose a change in income and falsely reported that there had been "no change"); *State v. Burge*, 9th Dist. Lorain No. 16CA010936, 2017-Ohio-5836, ¶ 36 (upholding tampering conviction where defendant purposely failed to disclose required information on his financial disclosure forms).

{¶22} Viewing the evidence in a light most favorable to the State, a rational trier of fact could have concluded that the State proved, beyond a reasonable doubt, that Mr. Infante tampered with records. *See Jenks*, 61 Ohio St.3d 259 at paragraph two of the syllabus. The State set forth evidence that he repeatedly filed ethics disclosure forms and tax returns containing false information. Each year, he affirmatively represented on his disclosure forms that he had neither received gifts, nor operated any businesses when, in fact, the opposite was true. He also underreported his sources of income, neglecting to include income related to a rental property, the operation of the ITAM, gambling pools he had conducted, various cash deposits from his annual fundraiser, and more than $100,000 worth of other, unaccounted for cash deposits. Mr. Infante did not record the foregoing information on his disclosure forms or share it with his tax preparer for purposes of preparing his federal and local tax forms. Further, the State set forth circumstantial evidence tending to show that he knowingly withheld that information to reap a benefit for himself rather than omitting it due to confusion or a mistake. *See Brunning* at ¶ 2; R.C. 2913.01(A), (B). Upon review, Mr. Infante has not shown that his tampering convictions are based on insufficient evidence. As such, his second assignment of error is overruled.

*Infante*, 2020 WL 1308678, at *3–5.

Oddly enough for an issue couched in terms of a sufficiency challenge, Infante does not dispute the facts or Ohio's courts' resolution of them. Indeed, he concedes that his "filings were inaccurate" and that he "failed to report gifts and incomes." Doc. 1-1, at 12. Instead, he claims that the Ohio court of appeals wrongly interpreted Ohio's statute as including liability for omissions. *Id.* at 13–16. Infante thus invites this Court to engage in an analysis of his Ohio

statute of conviction, Ohio Revised Code § 2913.42, as if this Court were a state court in Ohio.[6] He asserts that *omissions* do not violate the statute and begins with an analysis of the word *tampering*, as used in the statute's title, before explaining why he thinks the legislature omitted *omission* from the statute and why his prosecution under the statute violated Ohio's "specific versus general" rule of statutory construction. Doc. 1-1, at 12–14. Infante then reviews five Ohio decisions, none of which hold that an omission is insufficient to support a conviction under his statue of conviction. *Id*. at 14–16.

Infante misunderstands this Court's role. As Respondent notes, this Court does not review whether Ohio's courts properly interpreted Ohio's statutes. Doc. 9, at 29. Rather, as the Supreme Court has made clear, "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Railey v. Webb*, 540 F.3d 393, 398 (6th Cir. 2008) ("we do not consider on habeas review a state court's determination of state law"). Infante's argument about the intent of Ohio's

---

[6]     Relevant to Infante, Section 2913.42 provides:

> (A) No person, knowing the person has no privilege to do so, and with purpose to defraud or knowing that the person is facilitating a fraud, shall do any of the following:

> (1) Falsify, destroy, remove, conceal, alter, deface, or mutilate any writing, computer software, data, or record.

legislature is, thus irrelevant. *See Volpe v. Trim*, 708 F.3d 688, 697 (6th Cir. 2013), *as amended on denial of reh'g* (Jan. 31, 2013); *see also Banner v. Davis*, 886 F.2d 777, 780 (6th Cir. 1989) ("[w]hen assessing the intent of a state legislature, a federal court is bound by a state court's construction of that state's own statutes").

Here, Infante doesn't dispute whether he omitted information on the relevant forms; he admits that he did. Rather he disputes whether the statute can be satisfied by proof that he omitted something. But Ohio's courts have said that the statute can be satisfied in that manner. This Court is not in a position to second guess that decision. So the Court should reject Infante's second ground.[7]

### 3. Infante has forfeited his third ground

In his third ground, Infante asserts that there is insufficient evidence to support his theft-in-office convictions. Doc. 1, at 8; *see* Doc. 1-1, at 16. Before explaining what's wrong with the substance of Infante's argument, it is important to clarify the statute he was convicted of violating. Infante says that he was convicted of theft in office under Ohio Revised Code § "2923.31(A)(1)," which he says was charged in counts 23 and 24. Doc. 1, at 8; *see* Doc. 1-1, at

---

[7]     Respondent argues that Infante's second ground is procedurally defaulted in part. Doc. 9, at 31–33. Because "analysis of the merits of [Infante's] substantive claim[] 'present[s] a more straightforward ground for decision," *McLemore v. Bell*, 503 F. App'x 398, 404 (6th Cir. 2012) (quoting *Arias v. Hudson*, 589 F.3d 315, 316 (6th Cir. 2009)), I've opted to simply address the merits, *see Mahdi v. Bagley*, 522 F.3d 631, 635 (6th Cir. 2008).

34

16–17.  Counts 23 and 24, which were originally counts 38 and 39, *see* Doc. 9-1, at 220–21, did allege theft in office but they did so under Ohio Revised Code § 2921.41, *see* Doc. 9-1, at 23–24, 46, 208–09. So Infante's argument is directed to this latter statute.

With this brush cleared, here's what the Ohio court of appeals had to say about this issue:

> {¶48} In his fifth assignment of error, Mr. Infante argues that his due process rights were violated when he was convicted of two counts of theft in office in the absence of a unanimous finding as to the conduct that supported each count. Because each count alleged multiple instances of misconduct and the jury was not instructed on unanimity, Mr. Infante argues, the trial court failed to ensure that all twelve jurors agreed on the conduct giving rise to his convictions. For the following reasons, this Court rejects his argument.
>
> {¶49} Crim.R. 31(A) requires jury verdicts to be unanimous. All twelve jurors must agree that the elements of an offense have been proven beyond a reasonable doubt. *State v. Hendrix*, 11th Dist. Lake No. 2011-L-043, 2012-Ohio-2832, ¶ 44. Even so, "jurors need not agree [on the] single way * * * an element is satisfied[,]" if the element can be satisfied by one of several possible means. *State v. Gardner*, 118 Ohio St.3d 420, 2008-Ohio-2787, ¶ 38. When examining whether a defendant's due process rights and rights under Crim.R. 31(A) have been offended, "the critical inquiry is whether the case involves 'alternative means' or 'multiple acts.' " *Gardner* at ¶ 48.
>
> {¶50} Alternative means cases are those "'where a single offense may be committed in more than one way * * *.'" *Id*. at ¶ 49, quoting *State v. Jones*, 96 Hawai'i 161, 170 (2001). In those cases, an offense involves "a 'single conceptual grouping of related

facts * * *.'" *State v. Johnson*, 46 Ohio St.3d 96, 105 (1989), quoting United *States v. Duncan*, 850 F.2d 1104, 1113 (6th Cir.1988). The jurors therein need not agree on the facts underlying their guilty verdict because " 'different jurors may be persuaded by different pieces of evidence * * *.' " *Schad v. Arizona*, 501 U.S. 624, 631 (1991), quoting *McKoy v. North Carolina*, 494 U.S. 433, 449 (1990) (Blackmun, J., concurring.). For example, if all twelve jurors in an aggravated burglary case can agree that a defendant forcibly trespassed with the intent to commit a criminal offense, they need not agree on which criminal offense he intended to commit. *See State v. Fry*, 125 Ohio St.3d 163, 2010-Ohio-1017, ¶ 122-123. So long as " 'a rational trier of fact could have found each [alternative] means of committing the crime proved beyond a reasonable doubt,' " the verdict may stand. *Gardner* at ¶ 49, quoting *Jones* at 170.

{¶51} Multiple acts cases are those in which "a single count can be divided into two or more 'distinct conceptual groupings * * *." *Johnson* at 104, quoting *United States v. Gipson*, 553 F.2d 453, 458 (5th Cir. 1977). In those cases, "'several acts are alleged and any one of them could constitute the crime charged."' *Gardner* at ¶ 50, quoting *Jones* at 170. Because a conviction may not rest upon a "patchwork" verdict, see *Johnson* at 105, a jury in a multiple acts case " 'must be unanimous as to which act or incident constitutes the crime."' *Gardner* at ¶ 50, quoting *Jones* at 170. For example, if a defendant is charged with one count of complicity based on three distinct theories, all twelve jurors must agree on whether the defendant induced others to commit the crime (solicitation), helped others commit the crime (aid and abetted), or agreed with others to commit the crime (conspiracy). *See State v. Washington*, 11th Dist. Lake No. 95-L-128, 1997 WL 1843865, *7-8 (Jan. 10, 1997). To ensure juror unanimity, "'either the State [must] elect the particular criminal act upon which it will rely for conviction, or [ ] the trial court [must] instruct the jury that all of them must agree that the same underlying criminal act has been proved beyond a reasonable doubt."' *Gardner* at

¶ 50, quoting *Jones* at 170. "Trial judges are in the best position to determine the content of the instructions based on the evidence at trial and on whether the case presents an alternative-means or multiple-acts scenario." *Gardner* at ¶ 74.

{¶52} Mr. Infante argues that his due process rights were violated when the trial court failed to ensure that the jury reached a unanimous verdict on his two counts of theft in office. He notes that the State alleged several different kinds of misconduct in support of those counts, including misconduct related to the sale of scrap metal, misconduct related to the use of city equipment and employees for campaign purposes, and misconduct otherwise related to the use of city equipment and resources for private purposes. Because the State alleged multiple acts of misconduct in support of his charges, Mr. Infante argues, the trial court was required to either instruct the jury on unanimity or provide them with more detailed verdict forms (i.e., forms that required them to agree on specific instances of misconduct).

{¶53} Initially, this Court notes that Mr. Infante never asked the trial court to instruct the jury on unanimity or include a special finding on the verdict forms. He did repeatedly raise a concern about unanimity, but did so under the guise of pre- and post-verdict motions to dismiss. He did not object to the court's instructions on theft in office and, at the close of the jury instructions, he specifically indicated that he was satisfied with the instructions. Because Mr. Infante did not request an instruction on unanimity or changes to the verdict forms, this Court questions whether he has preserved his argument for appeal. *See Washington* at *8. Assuming without deciding that his argument is properly before this Court, however, we nonetheless conclude that it lacks merit.

{¶54} Mr. Infante's argument is essentially that the State based his theft in office charges on multiple acts, so the jury had to agree on which act he

37

committed. *See Gardner*, 118 Ohio St.3d 420, 2008-Ohio-2787, at ¶ 50, quoting *Jones*, 96 Hawai'i at 170. As noted, multiple acts cases are those in which " 'several acts are alleged and any one of them could constitute the crime charged.'" *Gardner* at ¶ 50, quoting *Jones* at 170. While, at first glance, it might appear that Mr. Infante's two charges were based on multiple acts, the record does not support the conclusion that his charges could "be divided into two or more 'distinct conceptual groupings * * *.'" *Johnson* 46 Ohio St.3d at 104, quoting *Gipson*, 553 F.2d at 458. Instead, in these particular circumstances, the jury was presented with an alternative-means scenario. *See Gardner* at ¶ 49, quoting Jones at 170.

{¶55} If an offender, in the same employment or capacity, commits a series of offenses for theft in office, the State may elect to try all of those offenses "as a single offense" and aggregate the value of "all [the] property and services involved in all of the offenses * * *." R.C. 2913.61(C)(3). If the State chooses to do so,

> it is not necessary to separately allege and prove each offense in the series. Rather, it is sufficient to allege and prove that the offender, within a given span of time, committed one or more theft offenses * * * in the offender's same employment [or] capacity * * *.

> R.C. 2913.61(C)(4). The State then need only "prove the aggregate value of the property or services in order to meet the requisite statutory offense level * * *." *Id*.

{¶56} The State charged Mr. Infante with two counts of theft in office. The first count encompassed a six-month timeframe and charged him with a violation of R.C. 2921.41(A)(2). The second count encompassed a ten-year timeframe and charged him with a violation of R.C. 2921.41(A)(1). The State, therefore, elected to try Mr. Infante for an ongoing

course of misconduct in two single offenses rather than seek convictions for many different instances of misconduct. *See* R.C. 2913.61(C)(3). To secure his conviction, the State was only required to prove that he, "within a given span of time, committed one or more theft offenses" in his capacity as mayor. R.C. 2913.61(C)(4). *See also* R.C. 2921.41(A) (forbidding a public official from committing any theft offense when either he uses his office to aid the theft or the property/service involved is owned by the political subdivision). So long as all twelve jurors all agreed that Mr. Infante, as mayor, committed a theft offense involving the City's property or services (R.C. 2921.42(A)(2)) and committed another theft offense by using his office (R.C. 2921.41(A)(1)), they need not have agreed on which theft offense he committed. *See Fry*, 125 Ohio St.3d 163, 2010-Ohio-1017, ¶ 122-123; State v. Davis, 116 Ohio St.3d 404, 2008-Ohio-2, ¶ 187-188. *See also State v. Feagin*, 5th Dist. Richland No. 14CA11, 2014-Ohio-5133, ¶ 40. His two theft in office offenses presented the jurors with single offenses that "[could have been] committed in more than one way * * *.' " *Gardner*, 118 Ohio St.3d 420, 2008-Ohio-2787, at ¶ 49, quoting *Jones*, 96 Hawai'i at 170. Thus, the "jurors [did not] need [to] agree [on the] single way * * * [the theft] element [of each offense] [was] satisfied." *Gardner* at ¶ 38.

{¶57} In an alternative means case, a verdict will stand so long as "'a rational trier of fact could have found each [alternative] means of committing the crime proved beyond a reasonable doubt.'" *Gardner* at ¶ 49, quoting *Jones* at 170. Mr. Infante has not set forth any argument that the State failed to set forth sufficient evidence of the alternative means giving rise to his theft in office convictions. *See* App.R. 16(A)(7). He does cite as problematic the fact that the jury acquitted him of bribery, as several of his bribery counts related to his having accepted certain property or services for his personal benefit. Those acquittals are inapposite, however, as "an inconsistency in a verdict does not arise out of inconsistent responses to different counts * * *."

> *State v. Brown*, 12 Ohio St.3d 147 (1984), syllabus. Because Mr. Infante has not challenged the adequacy of the State's evidence on any of the alternative means giving rise to his theft in office convictions, this Court will not construct an argument on his behalf. *See State ex rel. DeWine*, 2017-Ohio-1509, at ¶ 27. As such, his fifth assignment of error is overruled.

*Infante*, 2020 WL 1308678, at *10–12.

As mentioned above, to obtain relief on his third ground, Infante must do one of two things. He "must identify a 'clearly established' principle of 'Federal law' that" has been established by a holding of the Supreme Court and show that the court of appeals' adjudication "was contrary to," or "involved an unreasonable application of" that "clearly established" precedent. 28 U.S.C. § 2254(d)(1); *Fields*, 86 F.4th at 231–32. Alternatively, Infante must show that the court of appeals' adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

These requirements in Section 2254(d) are notably not mere suggestions that a court can simply ignore. *See Blackmon v. Booker*, 696 F.3d 536, 557 (6th Cir. 2012) (chiding a district court for "ignor[ing] the myriad of limitations that § 2254(d)(1) imposed on its review"). Rather section 2254(d) places "a heavy burden for *a petitioner* to overcome." *Tibbetts v. Bradshaw*, 633 F.3d 436, 442 (6th Cir. 2011) (emphasis added). Infante, however, ignores Section 2254(d)'s requirements and, similar to his previous ground, presents his argument as if this Court were an appellate court reviewing the trial court's decision on direct

appeal. Indeed, despite being represented by counsel, Infante doesn't mention the Ohio court of appeals' decision. *See* Doc. 1-1, at 16–18. So there is no basis to conclude that the court of appeals' adjudication (1) "was contrary to," or "involved an unreasonable application of, clearly established" precedent; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(1), (2). Infante has thus forfeited these necessary arguments. *J. B-K. by E.B. v. Sec'y of Kentucky Cabinet for Health & Fam. Servs.*, 48 F.4th 721, 730 (6th Cir. 2022). And even if he hasn't forfeited the arguments, by ignoring Section 2254(d), Infante has necessarily failed to carry the burden that subsection (d) imposed on him. So the Court should reject Infante's third ground.

In some instances, it might be appropriate for this Court to alternatively consider the merits in an abundance of caution. But this is not one of those instances. First, Infante is represented by counsel and it is not the Court's job to come up with arguments and analysis for a represented litigants. *See Judge v. Quinn*, 612 F.3d 537, 557 (7th Cir. 2010) ("'[i]t is not the obligation of [a] court to research and construct legal arguments open to parties, especially when they are represented by counsel'") (quoting *United States v. Holm*, 326 F.3d 872, 877 (7th Cir. 2003)).

Second, it's not clear what the merits of Infante's unmade argument would be. Infante cites *Richardson v. United States*, 526 U.S. 813 (1999) and

41

the plurality opinion in *Schad v. Arizona*, 501 U.S. 624 (1991).[8] And it's true that *Schad* and *Richardson* provide a rule. *See Gilbert v. Tibbals*, 593 F. App'x 494, 498–99 (6th Cir. 2014). They "distinguish between" those offenses involving a "'continuing series of violations'" and those involving "'alternative means.'" *Id.* (quoting *Richardson*, 526 U.S. at 815). As to the former category of offenses, "[a] jury must 'unanimously agree not only that the defendant committed some continuing series of violations but also that the defendant committed each of the individual violations necessary to make up that continuing series.'" *Id.* (quoting *Richardson*, 526 U.S. at 815). For the latter category, however, "'disagreement about means' is irrelevant 'as long as all 12 jurors unanimously concluded that the Government had proved the necessary related element.'" *Id.* (quoting *Richardson*, 526 U.S. at 815). In other words, the cases draw a distinction between "the elements of a crime[,]" which "must be determined unanimously," and "the means by which an element may be accomplished, [which] do not" need to be determined unanimously. *United States v. Gordon*, 713 F. App'x 424, 430 (6th Cir. 2017); *see also Mathis v. United States*, 579 U.S. 500, 506 (2016) (explaining that when a "list merely specifies diverse means of satisfying a single element of a single crime—or otherwise said, spells out various factual ways of committing some component

---

[8]     Infante also cites *In re Winship*, 397 U.S. 358 (1970), which is only generally applicable to this argument. Doc. 1-1, at 18. Cases related to a ground at only a "high level of generality" are, however, not sufficient to support a petitioner's burden under Section 2254(d). *Brown v. Davenport*, 596 U.S. 118, 136 (2022). So there is no need to discuss *Winship*.

of the offense—a jury need not find (or a defendant admit) any particular item").

Here, the Ohio court appeals determined that as to his theft-in-office offenses, Infante's "jury was presented with an alternative-means scenario." Infante, 2020 WL 1308678, at *12. And it reached this conclusion because under Ohio's statutes, if a defendant is alleged to have "commit[ted] a series of offenses for theft in office, the State may elect to try all of those offenses 'as a single offense' and aggregate the value of 'all [the] property and services involved in all of the offenses.'" *Id*. In that scenario, "it is not necessary to separately allege and prove each offense in the series." *Id*. Instead, the State need only "allege and prove that …, within a given span of time," the defendant "committed one or more theft offenses … in the … same employment [or] capacity." *Id*. In that case, "the State then need only 'prove the aggregate value of the property or services in order to meet the requisite statutory offense level.'" *Id*.

Neither *Schad* nor *Richardson* provide a basis to conclude that the Ohio court of appeals erred, let alone that Infante could meet the standards in Section 2254(d). Neither case could be said to stand for the proposition that Infante's is an elements rather than a means case. Indeed, Infante doesn't say that that *Schad* or *Richardson* stand for this point. Instead, on this point, he merely offers his counsel's unadorned, conclusory assertions and opinions. *See* Doc. 1-1, at 16–18. But those assertions and opinions are irrelevant as to

Infante's burden under Section 2254(d). Infante's counsel's assertions and opinions offer nothing to show that the state's court's adjudication "was contrary to," or "involved an unreasonable application of clearly established" precedent—assuming that would be his argument.

And on this point, "the Court in *Schad* stated that it has 'never suggested that in returning general verdicts ... the jurors should be required to agree upon a single means of commission.'" *Gilbert*, 593 F. App'x at 498 (quoting *Schad*, 501 U.S. at 631). Instead, "'different jurors may be persuaded by different pieces of evidence, even when they agree upon the bottom line.'" *Id*. (quoting *Schad*, 501 U.S. at 631–32). There is therefore "no general requirement that the jury reach agreement on preliminary factual issues which underlie the verdict." *Id*. (quoting Schad, 501 U.S. at 632). So one is left to guess how Infante would tie *Schad* and *Richardson* to his burden under Section 2254(d). At bottom, this Court is not in a position to construct that argument for Infante. The Court should thus reject Infante's third ground.

## Conclusion

For all the reasons set forth above, I recommend the Court deny Infante's petition.


Dated: January 25, 2024

         */s/ James E. Grimes Jr.*
         James E. Grimes Jr.
         U.S. Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1).  Failure to file objections within the specified time may forfeit the right to appeal the District Court's order.  *See Berkshire v. Beauvais*, 928 F.3d 520, 530–531 (6th Cir. 2019).